## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

ANDREW MICHELS,
1701 Kalorama Rd., N.W. #206
Washington, D.C. 20009

        Plaintiff,

        v.

DYNCORP INTERNATIONAL, LLC,
3190 Fairview Park Drive, Suite 700
Falls Church, VA 22042

        Defendant.

_____

Case Number: 1:07-cv-02199 (HHK)

### DEFENDANT'S MOTION TO DISMISS

Defendant DynCorp International, LLC ("DynCorp") hereby moves to dismiss Plaintiff's

Complaint, in its entirety, pursuant to Federal Rule of Civil Procedure 12(b)(6), on the ground

that Plaintiff has failed to state a claim upon which relief can be granted. Plaintiff is a former at-

will employee of DynCorp. Plaintiff alleges he was wrongfully terminated in violation of the

public policy underlying the Foreign Corrupt Practices Act of 1977, 15 U.S.C. §§ 78dd-1, *et seq.*

("FCPA"). The FCPA is a federal statute prohibiting corporate bribery and associated inaccurate

financial recordkeeping. Plaintiff does not allege DynCorp asked him to violate the statute, or

that he refused to violate the FCPA. Likewise, he does not allege DynCorp engaged in any

improper financial recordkeeping related to the bribery he fails to allege. There are no other

"public policies" referenced in the Complaint. For these reasons, Plaintiff fails to state a claim

upon which relief can be granted.

WHEREFORE, Defendant DynCorp International, LLC respectfully requests that this Court dismiss Plaintiff's Complaint, in its entirety, with prejudice.

Dated: April 15, 2008                    Respectfully submitted,


                                         /s/ Henry A. Platt
                                         Henry A. Platt (hplatt@saul.com)
                                         D.C. Bar No. 425994
                                         Saul Ewing LLP
                                         2600 Virginia Ave., N.W., Ste. 1000
                                         Washington, DC 20037-1922
                                         Phone: (202) 333-8800
                                         Fax: (202) 337-6065

                                         *Attorneys for Defendant*
                                         *DynCorp International, LLC*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
ANDREW MICHELS,                                    )
1701 Kalorama Rd., N.W. #206                        )
Washington, D.C.  20009                              )
                                                   )
        Plaintiff,                                 )
                                                   )
    v.                                             )        Case Number:  1:07-cv-02199 (HHK)
                                                   )
DYNCORP INTERNATIONAL, LLC,                         )
3190 Fairview Park Drive, Suite 700                 )
Falls Church, VA  22042                             )
                                                   )
        Defendant.                                 )
_____)

## STATEMENT OF POINTS AND AUTHORITIES
## IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Defendant DynCorp International, LLC ("DynCorp" or "the Company") has moved for

an Order dismissing Plaintiff *pro se* Andrew Michels' ("Plaintiff" or "Michels") Complaint,

pursuant to Fed. R. Civ. P. 12(b)(6).  DynCorp submits this Statement of Points and Authorities

in support of that Motion.

Plaintiff is a former at-will employee of DynCorp.  Plaintiff alleges he was wrongfully

terminated in violation of the public policy underlying the Foreign Corrupt Practices Act of

1977, 15 U.S.C. §§ 78dd-1, *et seq.* ("FCPA").  The FCPA is a federal statute prohibiting

corporate bribery and associated inaccurate financial recordkeeping.  Plaintiff does not allege

DynCorp asked him to violate the statute, or that he refused to violate the FCPA.  Likewise, he

does not allege DynCorp engaged in any improper financial recordkeeping related to the bribery

he fails to allege.  There are no other "public policies" referenced in the Complaint.  For these reasons, Plaintiff fails to state a claim upon which relief can be granted.

## STATEMENT OF FACTS

Defendant DynCorp provides innovative solutions to the technological and professional services needs of government and commercial industry worldwide.  Plaintiff alleges he was employed by DynCorp as the Director of Peacekeeping and Humanitarian Affairs, Compl. ¶¶ 7, 18, and "served as the designated Project Manager" for certain tasks "awarded under the Peacekeeping/Capacity Enhancement/Surveillance Efforts (PCESE)" program.  *Id.* at ¶¶ 7, 8, 18, 19.  Plaintiff alleges he was terminated on December 5, 2006.  *Id.* at ¶¶ 16, 27.

In his one-count *pro se* Complaint, Plaintiff attempts to set forth a cause of action for "wrongful termination in violation of public policy."  Plaintiff alleges he witnessed "waste, fraud, abuse and mismanagement concerning two DynCorp Projects; the Liberia Security Sector Reform and Sudan Security Sector Transformation"[1] while employed by DynCorp.  *Id.* at ¶¶ 9, 20.  According to the Complaint, these alleged incidents "led Plaintiff to believe DynCorp's conduct was in violation of [the] Foreign Corrupt Practices Act, as well as other foreign and United States laws."  *Id.* at ¶¶ 14, 25.

---

[1] The "waste, fraud, abuse and mismanagement" alleged by Plaintiff includes:  (i) "waste in relation to certain construction activities at the Barclay training Center and elsewhere in Liberia," Compl. ¶¶ 10, 21; (ii) "fraudulent change order and other needless modification[s] and changes that resulted in the unnecessary expenditure of hundreds of thousands of dollars," *id.*; (iii) "misuse of government furnished property, egregious overbilling by certain personnel assigned to projects . . . resulting in unjust enrichment to such personnel and the waste of hundred[s] of thousands of program dollars," *id.* at ¶¶ 11, 22; (iv) "reckless and intentional failure to obtain required visas for DynCorp employees," *id.* at ¶¶ 13, 24; and (v) "questionable billing practices in relation to claimed hours worked, and a request that Plaintiff conspire to illegally obtain Sudan[ese] visas," *id.* at ¶¶ 14, 25.  DynCorp denies these allegations.

Plaintiff alleges that he "brought the aforementioned matters to the attention of Senior DynCorp management," *id.* at ¶¶ 12, 23, but he does not claim to have ever actually reported *anything* to the Government.[2]  According to the Complaint:

> After Plaintiff learned of, investigated and disclosed this misconduct to Senior DynCorp management and advised them that he intended to disclose the conduct to Government officials, Plaintiff was subjected to a thinly veiled threat and reminded that he worked for DynCorp, in an attempt to intimidate Plaintiff and his former colleague, Sean McFate.

*Id.* at ¶¶ 15, 26.  Nevertheless, "Plaintiff remained in the employ of DynCorp International after the threat, but having raised the above issues with DynCorp management, Plaintiff was ordered as a condition of his employment to cease contact with the Government and ignore his obligation to report illegality to the Department of State."  *Id.* at ¶¶ 16, 27.  After allegedly "exhaust[ing] all potential internal administrative remedies with his chain of command," Plaintiff alleges he "was terminated on December 5, 2006."  *Id.*  Plaintiff seeks $6,000,000 in damages.

## ARGUMENT

### I.   STANDARD OF REVIEW

In deciding whether to grant a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must consider all well-pled allegations in the complaint as true.  *See Albright v. Oliver,* 510 U.S. 266, 268 (1994).  The Court "must construe the allegations and facts in the complaint in the light most favorable to the plaintiff and must grant the plaintiff the benefit of all inferences that can be derived from the facts alleged."  *Save Our Heritage Org. v. Gonzalez*, 533 F. Supp. 2d. 58, 61 (D.D.C. 2008) (citing *Barr v. Clinton,* 370 F.3d 1196, 1199 (D.C. Cir. 2004)).

"However, the Court need not accept asserted inferences or conclusory allegations that are unsupported by the facts set forth in the complaint."  *Id.* (citing *Kowal v. MCI Commc'n*

---

[2]  Plaintiff also does not allege *when* he supposedly informed DynCorp management of his beliefs.

*Corp.,* 16 F.3d 1271, 1276 (D.C. Cir. 1994)); *see also Papasan v. Allain,* 478 U.S. 265, 286

(1986) ("[W]e are not bound to accept as true a legal conclusion couched as a factual

allegation.") (citations omitted).  Finally, as the Supreme Court recently held, to survive a motion

to dismiss under Rule 12(b)(6), a plaintiff must set forth "enough facts to state a claim to relief

that is plausible on its face."  *Bell Atl. Corp. v. Twombley*, 127 S. Ct. 1955, 1974 (2007); *see also*

*id.* at 1968-69 ("retiring" the oft-cited formulation of *Conley v. Gibson*, 355 U.S. 41, 45-46

(1957), that a motion to dismiss should not be granted "unless it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").

## II.    PLAINTIFF'S "WRONGFUL TERMINATION" CLAIM DOES NOT FALL WITHIN THE NARROW "PUBLIC POLICY" EXCEPTION TO THE COMMON LAW DOCTRINE OF EMPLOYMENT-AT-WILL THAT IS RECOGNIZED IN THE DISTRICT OF COLUMBIA

"It has long been settled in the District of Columbia that an employer may discharge an

at-will employee at any time and for any reason, or for no reason at all."  *Kassem v. Washington*

*Hosp. Ctr.*, 513 F.3d 251, 254 (D.C. Cir. 2008) (quoting *Adams v. George W. Cochran & Co.,*

*Inc.*, 597 A.2d 28, 30 (D.C. 1991) (citations omitted)).  In *Adams*, however, the District of

Columbia Court of Appeals "recognized a 'very narrow' public policy exception to the at-will

employment doctrine:  'a discharged at-will employee may sue his or her former employer for

wrongful discharge *when the sole reason for the discharge is the employee's refusal to violate*

*the law*, *as expressed in a statute or municipal regulation*.'"  *Id.* (emphasis added) (quoting

*Adams*, 597 A.2d at 34).

In *Adams*, the plaintiff sued his former employer for wrongful discharge after he was

fired from his job as a delivery truck driver.  The plaintiff alleged that his employer wrongfully

terminated him after he refused to violate a District of Columbia law requiring inspection

stickers on all trucks.  The Court of Appeals, after reviewing the exceptions to at-will-

employment in other jurisdictions, held, "These and other cases have made clear that an employer cannot be allowed *to require his or her employees to break the law as a condition of continued employment*." *Adams*, 597 A.2d at 32.

This "*Adams* exception" also requires the plaintiff prove "by a preponderance of the evidence, that this refusal to violate the law was the 'sole reason' for his discharge." *Davis v. Gables Residential/H.G. Smithy*, 525 F. Supp. 2d. 87, 102 (D.D.C. 2007) (citing *Adams*, 597 A.2d at 34); *see also Thigpen v. Greenpeace, Inc.*, 657 A.2d 770, 771 (D.C. 1995) (the *Adams* exception "requires an outright refusal to violate a specific law, with the employer putting the employee to the choice of breaking the law or losing his job.").

In the present case, Plaintiff has failed to allege facts satisfying the *Adams* exception. The *only* statute, regulation, or constitutional provision cited by Plaintiff is the FCPA, which "outlaws corporate bribery of foreign officials and associated inaccurate or misleading financial recordkeeping." *Sec. & Exch. Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368, 1385 (D.C. Cir. 1980).[3]  Therefore, to fall within the *Adams* exception, Plaintiff must show that "the sole reason for [his] discharge [was his] refusal to *violate the law*, as expressed in" the FCPA.  *See Adams*, 597 A.2d at 34 (emphasis added).  Plaintiff fails to meet these minimum requirements because he has not alleged that he was presented with a demand to engage in bribery as a condition of his employment, that he ever "refused" to engage in bribery, or that he ever even witnessed other

---

[3]  The FCPA "makes it a crime to (1) 'willfully'; (2) 'make use of the mails or any means or instrumentality of interstate commerce'; (3) 'corruptly'; (4) 'in furtherance of an offer, payment, promise to pay, or authorization of the payment of any money, or offer, gift, promise to give, or authorization of the giving of anything of value to'; (5) 'any foreign official'; (6) 'for purposes of [either] influencing any act or decision of such foreign official in his official capacity [or] inducing such foreign official to do or omit to do any act in violation of the lawful duty of such official [or] securing any improper advantage'; (7) 'in order to assist such [corporation] in obtaining or retaining business for or with, or directing business to, any person.'"  *U.S. v. Kay*, 513 F.3d 432, 439-40 (5th Cir. 2007).

employees engaging in such conduct.

In addition, the FCPA imposes no legal duty on Plaintiff to report alleged "waste, fraud, abuse, and mismanagement" on the part of his coworkers.  In fact, the Complaint is devoid of a single allegation that is in any way related to the FCPA.  In short, Plaintiff does not allege an "outright refusal" to violate the FCPA.  *See Thigpen*, 657 A.2d at 771.  Accordingly, Plaintiff's complaint must be dismissed for failure to state a claim upon which relief can be granted.

In paragraph 14 of the Complaint, Plaintiff alleges that he believed "DynCorp's conduct was in violation of [the FCPA], as well as other foreign and Unites States laws."  Compl. ¶ 14.  *See also id.* at ¶ 25.  However, Plaintiff makes no attempt to identify these "other" laws, or the public policies they may contain, which might theoretically be implicated in his termination.  Plaintiff therefore fails to state a claim upon which relief may be granted.  *See Twombley*, 127 S. Ct. at 1974 (holding that a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face.").

In *Carl v. Children's Hosp.*, 702 A.2d 159 (D.C. 1997) (*en banc*), the District of Columbia Court of Appeals left open the possibility of other exceptions to the at-will-employment doctrine based upon public policy, but it made clear that "the recognition of any [other] public policy exception to the at-will doctrine must be *solidly based on a statute or regulation* that reflects the *particular policy* to be applied, or (if appropriate) on a constitutional provision *concretely applicable to the defendant's conduct*."  *Id.* at 163 (emphasis added).

> This court should consider seriously only those arguments that reflect a *clear mandate of public policy – i.e.*, those that make a clear showing, based on some *identifiable policy* that has been '*officially declared*' in a statute or municipal regulation, *or in the Constitution*, that a new exception is needed. . . . [T]here must be a *close fit between the policy thus declared and the conduct at issue in the allegedly wrongful termination*.

*Id.* at 164 (emphasis added) (footnotes omitted) (Terry, J., concurring); *see also Abdul-Qawiy v.*

*Nat'l R.R. Passenger Corp.*, No. Civ.A. 0401030HHK, 2005 WL 3201271, at *8 (D.D.C. Oct. 25, 2005) (citations omitted) (copy attached); *Davis*, 525 F. Supp. 2d. at 102 (stating a public policy exception to the at-will-employment doctrine "must be 'firmly anchored in either the Constitution or in a statute or regulation' which clearly reflects the particular 'public policy' being relied upon.' Furthermore, 'there must be a close fit between the policy [ ] declared and the conduct at issue in the allegedly wrongful termination.'") (citations omitted).

Plaintiff does not satisfy the *Carl* test because he has not identified an "officially declared" public policy in the FCPA – or any "other" statute – that is related to the alleged "waste, fraud, abuse, and mismanagement" he allegedly threatened to report. As explained above, "[t]he Foreign Corrupt Practices Act outlaws corporate bribery of foreign officials and associated inaccurate or misleading financial recordkeeping." *Dresser Indus.*, 628 F.2d at 1385. Even when construing the allegations in the light most favorable to the Plaintiff, there is simply no logical connection between the FCPA and the facts alleged. Plaintiff does not allege that DynCorp engaged in corporate bribery, or that it engaged in inaccurate or misleading financial recordkeeping associated with such conduct. Therefore, Plaintiff's reliance on the FCPA is misplaced.

Because the public policy exception under *Carl* should be "narrowly" interpreted, and because the Complaint fails to allege any act of bribery on the part of DynCorp, Plaintiffs allegations do not satisfy the "identifiable policy" and "close fit" requirements of the *Carl* test. Likewise, his failure to identify any other "clear mandate of public policy" at issue is fatal to his claim. For these reasons, Plaintiff's wrongful termination in violation of public policy claim must be dismissed for failure to state a claim upon which relief can be granted.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant DynCorp International, LLC respectfully requests that the Court grant its Motion and enter an Order dismissing Plaintiff's Complaint, in its entirety, with prejudice.


Dated: April 15, 2008                    Respectfully submitted,


                                         /s/ Henry A. Platt
                                         Henry A. Platt (hplatt@saul.com)
                                         D.C. Bar No. 425994
                                         Saul Ewing LLP
                                         2600 Virginia Ave., N.W., Ste. 1000
                                         Washington, DC 20037-1922
                                         Phone: (202) 333-8800
                                         Fax: (202) 337-6065

                                         *Attorneys for Defendant*
                                         *DynCorp International, LLC*

943486.1



**H** Abdul-Qawiy v. National R.R. Passenger Corp.
D.D.C.,2005.
Only the Westlaw citation is currently available.
United States District Court,District of Columbia.
Waleed ABDUL-QAWIY, Plaintiff,
v.
NATIONAL RAILROAD PASSENGER CORP., et
al., Defendants.
**No. Civ.A. 0401030HHK.**

Oct. 25, 2005.

Raouf Muhammad Abdullah, Lanham, MD, for
Plaintiff.
Andrew J. Marcus, Alan S. Block, Bonner, Kiernan,
Treback & Crociata, Jonathan Peter Rolfe, Guerrieri
Edmond & Clayman, P.C., Washington, DC, Kevin
C. Brodar, Cleveland, OH, for Defendants.

MEMORANDUM OPINION AND ORDER

KENNEDY, J.
**\*1** Plaintiff, Waleed Abdul-Qawiy ("Abdul-Qawiy"),
brings this action against defendants, National
Railroad Passenger Corporation ("Amtrak"), United
Transportation Union ("UTU"), and United
Transportation Union Local 1933 ("Local 1933"),
alleging that Amtrak illegally terminated his
employment based solely upon alleged work-related
injuries and that this termination violated the terms of
a collective bargaining agreement, the Railway Labor
Act, 45 U.S.C. §§ 151 et seq., the Federal Employer's
Liability Act, 45 U.S.C. §§ 51, et seq., the public
policy of the District of Columbia, and various
constitutional provisions. Presently before the court is
Amtrak's motion to dismiss Counts Two, Three, and
Four of Abdul-Qawiy's complaint [# 5]. Amtrak
argues that these counts are preempted by the
exclusive arbitral provisions of the Railway Labor
Act, or, in the alternative, that Counts Three and Four
fail to state a claim upon which relief may be granted.
Upon consideration of the motion, the opposition
thereto, and the record of this case, the court
concludes that the motion should be granted in part
and denied in part.

I. BACKGROUND INFORMATION

The facts and allegations of this case pertinent to the
motion before the court are as follows. Defendant
Amtrak is a common carrier subject to the provisions
of the Railway Labor Act, 45 U.S.C. §§ 151 et seq.
On or about July 3, 2002, Amtrak hired Abdul-Qawiy
as an Assistant Passenger Conductor. The terms and
conditions of Abdul-Qawiy's position were governed
by a collective bargaining agreement between
Amtrak and UTU.[FN1] Under the agreement, new
conductors are subject to a ninety-day probationary
period. If the employee does not meet with
disapproval during the probationary period, his
application is considered approved. Additionally, the
agreement requires that no employee shall be
dismissed without a fair and impartial hearing.

> FN1. On or about January 19, 1986, Amtrak
> and UTU entered into the collective
> bargaining agreement. Local 1933, through
> its association with UTU, is a party to that
> collective bargaining agreement.

On July 8, 2002, Abdul-Qawiy began an eight-week
training course for new employees, which was
successfully completed on or about September 3,
2002. Abdul-Qawiy alleges that his employment
began, for purposes of the collective bargaining
agreement, on July 8, 2002 when he reported to his
first day of training. Therefore, according to Abdul-
Qawiy, the 90-day probationary period under the
collective bargaining agreement ended, and Abdul-
Qawiy became a permanent employee, on October 6,
2002. Defendants, however, assert that Abdul-
Qawiy's employment did not begin until *after* the
training course was completed on September 3, 2002,
and therefore Abdul-Qawiy never became a
permanent employee.

Abdul-Qawiy alleges that he became a member of
Local 1933 on or about October 1, 2002, that Amtrak
deducted union dues from his paycheck and
forwarded the payments to Local 1933, and that he is
still a current union member in good standing. UTU
and Local 1933 deny that Abdul-Qawiy is currently a
member of the union, averring that all union dues
were mistakenly deducted from Abdul-Qawiy's
paycheck and have since been refunded.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3201271 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 3201271)**

Page 2

**\*2** On or about October 7, 2002, Abdul-Qawiy injured his arm while lifting passengers' luggage. He claims that he was not provided with proper lifting equipment and that he was instructed to lift luggage that was too heavy to be lifted safely. Abdul-Qawiy also claims that he was required to open and close train doors, some of which were defective and therefore difficult to open. After Abdul-Qawiy reported his injury to his supervisor, he was instructed to go to the hospital. Amtrak paid for Abdul-Qawiy's hospital visit. The following day, the chairman of Local 1933, Ray Cunningham, informed Abdul-Qawiy that he was terminated without reason because Amtrak had decided not to make him a permanent employee. Abdul-Qawiy petitioned his union representative to intercede with Amtrak on his behalf. Local 1933, however, agreed with Amtrak that Abdul-Qawiy was still a probationary employee and was therefore entitled to neither a hearing nor union representation.

Abdul-Qawiy alleges that he hired an attorney to persuade Amtrak and the union to give him a hearing, as he claims is required under the collective bargaining agreement. Abdul-Qawiy further alleges that he repeatedly attempted to contact both Amtrak and the union from late 2002 until June 2003, but that neither was responsive. On June 22, 2004, Abdul-Qawiy initiated the present action alleging that: (1) Amtrak breached the Federal Employer's Liability Act; (2) Amtrak breached the collective bargaining agreement; (3) Amtrak wrongfully discharged Abdul-Qawiy in violation of the common law and statutes of the District of Columbia; (4) Amtrak violated Abdul-Qawiy's constitutionally protected property interests; (5) UTU and Local 1933 breached their duty of fair representation; and (6) UTU and Local 1933 breached their contractual relationship with Abdul-Qawiy.

## II. ANALYSIS

In moving to dismiss Counts Two, Three, and Four of Abdul-Qawiy's complaint, Amtrak essentially makes two arguments. First, it argues that these counts are preempted by the Railway Labor Act, 45 U.S.C. §§ 151 *et seq.* Second, Amtrak contends that Counts Four and Five fail to state a claim upon which relief can be granted.

### A. Federal Preemption

#### 1. Legal Standard

While Amtrak grounds its motion on Fed.R.Civ.P. 12(b)(6) motion, its preemption argument actually challenges this court's subject matter jurisdiction with respect to some of Abdul-Qawiy's claims. A motion to dismiss for lack of subject matter jurisdiction, which is properly considered under Fed.R.Civ.P. 12(b)(1), should not be granted "unless plaintiffs can prove no set of facts in support of their claim which would entitle them to relief." *Kowal v. MCI Commc'ns Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994); *Beverly Enters., Inc. v. Herman,* 50 F.Supp.2d 7, 11 (D.D.C.1999). Additionally, at the dismissal stage, the plaintiff's complaint must be construed liberally, and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the alleged facts. *See EEOC v. St. Francis Xavier Parochial Sch.,* 117 F.3d 621, 624 (D.C.Cir.1997).

#### 2. Plaintiff's Preemption Argument

**\*3** In enacting the Railway Labor Act, Congress sought to promote stability in labor-management relations by "providing a comprehensive framework for the resolution of labor disputes in the railroad industry." *Atchison, Topeka & Santa Fe Ry. Co. v. Buell,* 480 U.S. 557, 562, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987). To do so, the Act provides for mandatory grievance procedures to resolve certain labor disputes, commonly referred to as "minor disputes." "Minor" disputes stem from the interpretation or application of an existing collective bargaining agreement and are distinguished from "major" disputes, which arise from the formation or change of a collective bargaining agreement. *Consolidated Rail Corp. v. Ry. Labor Executives Ass'n,* 491 U.S. 299, 302-07, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989). When a minor dispute arises, labor and management must submit to binding arbitration before the National Railroad Adjustment Board (or an adjustment board established by the parties). 45 U.S.C. § 153 First (i). The jurisdiction of the Adjustment Board over minor disputes is exclusive, subject to limited judicial review. *Consolidated Rail,* 491 U.S. at 304.

Not all claims arising out of an employment-related

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3201271 (D.D.C.)
(Cite as: Not Reported in F.Supp.2d, 2005 WL 3201271)

dispute are preempted by the Act, however. Rather, only those state-law claims that require an interpretation of the collective bargaining agreement itself are preempted. In discussing the scope of federal preemption under an analogous statute, the Supreme Court has held that "if the resolution of a state-law claim depends upon the meaning of a collective bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted" and "the interpretation of collective-bargaining agreements remains firmly in the arbitral realm."*Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 407, 411, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1998).[FN2] That said, whenever the "state law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement" for preemption purposes. *Id.* at 410;*see also Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, 256, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994) (holding that the Railway Labor Act's "mechanism for resolving minor disputes does not pre-empt causes of action to enforce rights that are independent of the [collective bargaining agreement]").

> FN2.*Lingle* involved the preemptive scope of § 301 of the Labor Relations Management Act, 29 U.S.C. § 185. The Supreme Court later explicitly held that the standard adopted in *Lingle* also "provides an appropriate framework for addressing pre-emption under the RLA, and we adopt the *Lingle* standard to resolve claims of RLA pre-emption."*Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, 263, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994).

Amtrak argues that Abdul-Qawiy's "breach of contract, wrongful discharge and property interest claims all allege that Amtrak interfered with his rights under the [collective bargaining agreement] by failing to provide him with certain procedural rights required under [the rules of that agreement]." Def.'s Mot. at 9. Because these claims therefore "require[ ] analysis of the [collective bargaining agreement] and employee's rights under it," Amtrak contends they are preempted by the Railway Labor Act. *Id.* In opposition, Abdul-Qawiy argues that neither his wrongful discharge nor his property interest claim is preempted. Abdul-Qawiy further argues that, even if

his claims are preempted, he was nonetheless not required to grieve his termination under one of the recognized exceptions to the Railway Labor Act's mandatory arbitration provisions. The court will now analyze whether each of Abdul-Qawiy's claims are preempted by the Railway Labor Act.

a. Breach of Contract Claim

**\*4** Count Two of Abdul-Qawiy's complaint is a state-law breach of contract claim against Amtrak. The contract allegedly breached is the collective bargaining agreement, which, according to Abdul-Qawiy, created "a contractual duty" for Amtrak "to terminate plaintiff only for cause and only after a fair and impartial hearing."Compl. ¶¶ 28-30.A determination of this claim will necessarily require this court to reference and interpret the collective bargaining agreement itself. Accordingly, Abdul-Qawiy's breach of contract claim is a "minor dispute" preempted by the Railway Labor Act and subject to its arbitration procedures.[FN3]

> FN3. Abdul-Qawiy never disputes that this claim is preempted in his Opposition.

That Abdul-Qawiy's breach of contract claim is a minor dispute, subject to the arbitration provisions of the Railway Labor Act, does not necessarily preclude this court from entertaining jurisdiction over it. Abdul-Qawiy contends that four exceptions to the general rule that a federal court cannot entertain jurisdiction over preempted claims apply to his contract claim against Amtrak. These exceptions apply: (1) when the employer repudiates the private grievance machinery, *Vaca v. Stipes,* 386 U.S. 171, 185, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); (2) when resort to administrative remedies would be futile, *Glover v. St. Louis-San Francisco Ry. Co.,* 393 U.S. 324, 330, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969); (3) when the employer is joined in a duty of fair representation claim against the union, *Richins v. Southern Pacific Co.,* 620 F.2d 761, 762 (10th Cir.1980); and (4) when, because of a breach of the duty of fair representation by the union, the employee loses the right to grieve before the Arbitration Board, *Childs v. Pa. Fed'n Bhd. of Maint. Way Employees,* 831 F.2d 429 (3d Cir.1987).*See also Sisco v. Consolidated Rail Co.,* 732 F.2d 1188, 1190 (3d Cir.1984) (citations omitted) (summarizing exceptions); *Martin v. American Airlines, Inc.,* 390

Case 1:07-cv-02199-HHK    Document 5    Filed 04/15/2008    Page 14 of 19

Not Reported in F.Supp.2d                                                                                Page 4
Not Reported in F.Supp.2d, 2005 WL 3201271 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 3201271)**

F.3d 601, 608-10 (8th Cir.2004) (same). None of the exceptions apply in Abdul-Qawiy's case, and therefore jurisdiction over his contractual claim against Amtrak is lacking. [FN4]

> [FN4.] It appears that the D.C. Circuit has never explicitly recognized all of these four exceptions. The court will assume *arguendo* that they are valid exceptions and proceed to determine whether any apply to Abdul-Qawiy's case. Because the court ultimately concludes that none are applicable, the court need not address whether these exceptions should be recognized in this jurisdiction.

The first exception-repudiation of the grievance procedure by the employer-does not apply because Abdul-Qawiy never alleged that he exercised his statutory right, under 45 U.S.C. First (j), to petition the Adjustment Board directly without the aid of the union. While he claims that both the union and the railroad were unresponsive to his requests for a due process hearing, Com pl. ¶¶ 18-19, and that the union refused to assist him with filing a complaint, *id.* ¶ 20, Abdul-Qawiy never alleges that he actually filed a grievance with the Board on his own behalf. Because Abdul-Qawiy had the right under the Railway Labor Act to do so and opted not to, the court cannot conclude that any failure of the grievance machinery was the result of Amtrak's actions. *See Childs, 831 F.2d at 438* (holding that failure of an employee to petition the Adjustment Board directly negates any allegation that the grievance procedure was repudiated by the employer).

*5 Abdul-Qawiy argues that the second exception applies because it would have been futile for him to instigate the grievance procedures directly. This is so, he argues, because if he sought arbitration without the support of the union, "he risked the union's ire and the loss of his champion."Pl.'s Opp'n at 5. This allegation, however, does not support the conclusion that seeking arbitration would have been futile. Any allegation that the union would be upset by Abdul-Qawiy's use of his statutory right to press his claims directly, even if true, falls short of establishing that the Arbitration Board would therefore have refused to provide the relief that Abdul-Qawiy seeks. Absent such an allegation, the court cannot conclude that arbitration would have been futile.

With respect to the third exception, courts have noted that "an employer may be joined in a duty of fair representation action against the union if facts are alleged tying the employer to the events complained of."*Sisco, 732 F.2d at 1190;see also Raus v. Bhd. Ry. Carmen, 663 F.2d 791, 798 (8th Cir.1981)* (holding that collusion or some similar nexus between the union and the employer must be present to invoke this exception). Although Abdul-Qawiy's complaint suggests that the union "colluded" with Amtrak to accomplish his discharge, Compl. ¶ 34, he fails to allege any facts to support this charge. Such a conclusory statement, wholly unsupported by factual allegations in the complaint, is insufficient to connect Amtrak to the union's alleged breach of its duty of fair representation. *Kowal, 16 F.3d at 1276* ("[T]he court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint."). Abdul-Qawiy, therefore, fails to meet the necessary requirements to invoke jurisdiction by way of this exception.

A fourth, and final, exception exists when a duty of fair representation claim is brought against a union and the employee claims that he lost his right to press his grievance before the Adjustment Board because of this breach. In such a case, a court is permitted to entertain jurisdiction over the contract claims, despite the fact that they would normally be arbitrated. *See, e.g., Childs, 831 F.2d at 438-441 (3d Cir.1987); Kaschak v. Consolidated Rail Corp., 707 F.2d 902, 905-910 (6th Cir.1983); Schum v. South Buffalo Ry. Co., 496 F.2d 328, 330-32 (2d Cir.1974).* [FN5] In order to invoke this exception, there is a "heavy burden" on the plaintiff to show "that the union's breach of its duty of fair representation precluded his recovery from the railroad, and that his reliance on the union was reasonable."*Childs, 831 F.2d at 441;Kaschak, 707 F.2d at 913*. Abdul-Qawiy's complaint fails to meet this "heavy burden"; he never alleges that he lost any rights he had because of the union's alleged breach nor that any recovery was precluded as a result. All he alleges is that the union failed to file a complaint on his behalf and therefore "permitted the time for demanding a claim to lapse."Compl. ¶ 42. However, Abdul-Qawiy acknowledges that the union informed him of their refusal to file a claim. *Id.* Consequently, the court cannot conclude that Abdul-Qawiy's reliance on the union to file his grievance was reasonable, particularly given the fact that the RLA explicitly allows an employee to begin the grievance process directly without aid of the union.

Case 1:07-cv-02199-HHK    Document 5    Filed 04/15/2008    Page 15 of 19

Not Reported in F.Supp.2d                                                                                                    Page 5
Not Reported in F.Supp.2d, 2005 WL 3201271 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 3201271)**

FN5. This exception is based upon the belief that the central policy of the RLA preemption scheme-"affording railway laborers a fair and efficient means of redressing their grievances,"*Childs, 831 F.2d at 440*-outweighs the RLA's policies of "avoiding unnecessary judicial intervention and allowing the arbitration system full play."*Id.* As the Third Circuit noted in *Childs,*"where the union effectively eliminates [arbitration as an option] and frustrates the federal administrative remedy, fairness to the employee and fidelity to the underlying goals of the RLA mandate that we grant the employee a forum in federal court."*Id.* at 441.

**\*6** In sum, Abdul-Qawiy's complaint fails to establish that any of the exceptions to Railway Labor Act preemption apply in this case. Absent a showing that an exception applies, resolution of Abdul-Qawiy breach of contract claim lies within the jurisdiction of the Adjustment Board. Accordingly, dismissal of this claim is appropriate.

b. Wrongful Discharge Claim

Count Three alleges that Amtrak's decision to terminate Abdul-Qawiy was wrongful because it was based solely on his "work related injuries in violation of the laws of the District of Columbia and against public policy."*Id.* ¶ 32.Amtrak argues that a state-law claim for wrongful termination is preempted under the Railway Labor Act, citing *Andrews v. Louisville & Nashville Ry Co.,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972). In *Andrews,* the Supreme Court began by noting that wrongful discharge claims, to be valid, must rely upon "some sort of statutory or contractual standard that modifies the traditional common-law rule that a contract of employment is terminable by either party at will."*Id.* at 324.Because, in *Andrews,* the "only source for petitioner's right not to be discharged [was] the collective-bargaining agreement," the Court concluded that the claim was preempted by the Railway Labor Act. *Id. Andrews* is distinguishable from the case here. Here, unlike in *Andrews,* Abdul-Qawiy does not rely upon the collective bargaining agreement for his right not to be discharged. Rather, he cites "the laws of the District of Columbia" and "public policy" as the source of

such a right. Compl. ¶ 32. Because Abdul-Qawiy does not rely upon the bargaining agreement, the wrongful discharge claim is independent of that agreement and is therefore not preempted. *See Lingle, 486 U.S. at 410.*

c. Due Process Claim

Finally, Count Four of Abdul-Qawiy's complaint alleges that Amtrak violated Abdul-Qawiy's constitutional rights and property interest in his employment at Amtrak. Compl. ¶¶ 36-37.Abdul-Qawiy looks to the Fifth and Fourteenth Amendments to the U.S. Constitution to support this allegation. *Id.* As above, Amtrak argues that the Railway Labor Act preempts these constitutional claims. The court disagrees.

In a similar case, the Supreme Court held that the Railway Labor Act's binding arbitration provisions did not deprive a district court of the jurisdiction to hear an employee's claim for personal injuries arising under the Federal Employers' Liability Act. *Buell, 480 U.S. at 564-65.* In so holding, the Supreme Court noted that the Railway Labor Act did not preempt other federal statutes that provide rights outside the scope of those covered by the Act.*Id. at 565* ("[N]otwithstanding the strong policies encouraging arbitration, different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers.") (internal quotations and citations omitted). Given that the Supreme Court has determined that relief under federal statutes distinct from the Railway Labor Act is not preempted by that Act, the court finds it difficult to perceive why constitutional claims should be treated differently. *See Coppinger v. Metro-North Commuter R.R.,* 861 F.2d 33, 37 (2d Cir.1988) ( "[W]e are persuaded that there is no principled basis upon which to distinguish [the plaintiff's constitutional claims] from the FELA issue in *Buell.*" ). This is particularly so given the Supreme Court's holding that, "where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear."*Webster v. Doe,* 486 U.S. 592, 603, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988) (citing *Johnson v. Robison,* 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974)). Congress did not evidence such a purpose in the Railway Labor Act. *Coppinger,* 861 F.2d at 37. In light of these precedents, the court is

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

compelled to conclude that Abdul-Qawiy's constitutional claim remains properly in federal court.

B. Dismissal for Failure to State a Claim

**\*7** Amtrak also moves for dismissal under Fed.R.Civ.P. 12(b)(6) contending that both Counts Three and Four fail to state a claim upon which relief may be granted. Under 12(b)(6), dismissal is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."*Martin v. Ezeagu,* 816 F.Supp. 20, 23 (D.D.C.1993) (internal quotations omitted); *see Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (stating that a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). In addition, the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Ben. Plans Litig.,* 854 F.Supp. 914, 915 (D.D.C.1994); *see Schuler v. United States,* 617 F.2d 605, 608 (D.C.Cir.1979) (stating that the court must give the plaintiff "the benefit of all inferences that can be derived from the facts alleged"). In evaluating a motion to dismiss, the court is limited to considering facts alleged in the complaint, any documents either attached to or incorporated in the complaint, matters of which the court may take judicial notice, *St. Francis Xavier Parochial Sch.,* 117 F.3d at 624, and matters of public record, *Marshall County Health Care Auth. v. Shalala,* 988 F.2d 1221, 1226 n. 6 (D.C.Cir.1993). Factual allegations in briefs or memoranda of law may not be considered when deciding a motion to dismiss, particularly when the facts they contain contradict those alleged in the complaint. *Henthorn v. Dep't of Navy,* 29 F.3d 682, 688 (D.C.Cir.1994).

1. Wrongful Discharge

Abdul-Qawiy alleges that he was wrongfully discharged from employment with Amtrak because his termination was based solely on an alleged work-related injury. In support of this claim, Abdul-Qawiy asserts that his termination violated "the statutes and the common law of the District of Columbia" and was against public policy. Compl. at ¶ 35.[FN6]Amtrak contends that Abdul-Qawiy's complaint is "devoid of any allegation sufficient to meet the requirements of a public policy exception to the at-will doctrine" that governs employment relationships in the District of Columbia. Def.'s Mot. at 11. In light of this purported failure, Amtrak urges the court to dismiss Abdul-Qawiy's wrongful discharge claim.

> FN6. Abdul-Qawiy does not allege, for purposes of his wrongful termination claim, that he was a tenured employee and the termination therefore violated the terms of the collective bargaining agreement. Rather, Abdul-Qawiy alleges that his termination was wrongful solely because it violated the public policy of the District of Columbia. Failing to allege that his employment was protected under the collective bargaining agreement, the court concludes that Abdul-Qawiy's wrongful discharge claim does not suggest that he was anything other than an at-will employee. Had Abdul-Qawiy claimed that he was not an at-will employee in his wrongful discharge claim, that claim would have been preempted by the Railway Labor Act under the principles espoused in *Andrew,* 406 U.S. at 324.
>
> While the allegations in Abdul-Qawiy's wrongful discharge claim seem to contradict the allegations in his other claims that he was a tenured employee, such alternative pleading is acceptable under Rule 8(e)(2) of the Federal Rules of Civil Procedure.

District of Columbia law has long recognized the at-will employment doctrine, which states that "an employer may discharge an at-will employee at any time and for any reason, or for no reason at all."*Adams v. George W. Cochran & Co.,* 597 A.2d 28, 30 (D.C.1991). In *Adams,* however, the D.C. Court of Appeals recognized an intentional tort for wrongful discharge, holding that "there is a very narrow exception to the at-will doctrine under which a discharged at-will employee may sue his or her former employer for wrongful discharge when the sole reason for the discharge is the employee's refusal to violate the law, as expressed in a statute or municipal regulation."597 A.2d at 34. The court later clarified, in *Carl v. Children's Hosp.,* 702 A.2d 159,

160 (D.C.1997) (en banc), that the " 'very narrow exception' created in *Adams* should not be read in a manner that makes it impossible to recognize any additional public policy exceptions to the at-will doctrine that may warrant recognition."Under *Carl* and subsequent case law, requests to recognize additional public policy exceptions to the at-will employment doctrine should be addressed on a case-by case basis pursuant to the following instructions:

**\*8** The court should consider seriously only those arguments that reflect a clear mandate of public policy-i.e., those that make a clear showing, based on some identifiable policy that has been "officially declared" in a statute or municipal regulation, or in the Constitution, that a new exception is needed. Furthermore, there must be a close fit between the policy thus declared and the conduct at issue in the allegedly wrongful termination.

*Id.* at 164 (Terry, J., concurring) (footnotes omitted); *accord Liberatore v. Melville Corp., 168 F.3d 1326, 1331 (D.C.Cir.1999)* (stating that "the effective holding of the en banc court" in *Carl* was that circumstances other than an employee's outright refusal to violate a law can constitute grounds for a public policy exception if "solidly based on a statute or regulation that reflects the particular public policy to be applied").

Here, Abdul-Qawiy argues that the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51, *et seq.,* evinces a public policy against terminating an employee solely because that employee is injured during the course of his employment. This federal statute, he argues, provides the firm footing upon which a new exception to the at-will doctrine should be based. The court cannot agree.

Congress passed FELA in 1908 to assure railroad employees a safe workplace and to provide the right to recover compensation if injured in a railroad related accident. The purpose of FELA, is not, as Abdul-Qawiy suggests, to protect injured employees from being terminated. Rather, as the First Circuit has stated, the "obvious purpose" of FELA is to "is to enlarge the remedy of railroad employees injured as a result of hazards incident to their work."*Metropolitan Coal Co. v. Johnson, 265 F.2d 173, 178 (1st Cir.1959).* In fact, there is no provision in FELA that makes it unlawful for a railroad to terminate an

employee because that employee was injured while on the job.[FN7] Nor are the purposes of FELA impeded by the fact that an employee is terminated; a terminated employee is still free to seek compensation for his injuries under FELA. As such, FELA cannot be deemed to "clearly reflect" a policy against terminating injured employees. Abdul-Qawiy reliance on FELA is therefore misplaced and his attempts to have this court recognize a new exception to the at-will employment doctrine must be rejected. Having failed in this task, his wrongful termination claim must be dismissed for failure to state a claim upon which relief may be granted.

> FN7. The FELA does make it criminally sanctionable for a railroad to discharge or discipline an employee who "furnishes voluntarily" information relating to a work-place accident. 45 U.S.C. § 60. This section is meant to "enable injured employee to readily obtain all available information from witnesses, particularly employees of carrier."*Dugger v. Baltimore & O.R. Co., 5 F.R.D. 334 (D.C.N.Y.1946)*. It does not, however, protect an employee who suffers a work-place injury from adverse employment actions.

2. Due Process Claim

In Count Four, Abdul-Qawiy claims that he has a property interest in continued employment with Amtrak, which was deprived when "Amtrak terminated [him] and then conspired with UTU and Local 1933 to deny him his appeal rights."Compl. ¶ 37.[FN8]In response, Amtrak argues that this count fails to state a claim upon which relief may be granted, primarily because Abdul-Qawiy was allegedly an untenured employee who lacked a property interest in his continued employment.

> FN8. As Abdul-Qawiy correctly notes in his complaint, Amtrak is considered a government entity for constitutional purposes and its actions are subject to the constraints of the Constitution. *Lebron v. Nat'l R.R. Passenger Corp., 513 U.S. 374, 115 S.Ct. 961, 130 L.Ed.2d 902 (1995).*

**\*9** Abdul-Qawiy's constitutional due process claim turns on whether he had a property interest in

continued employment. *Bd. of Regents v. Roth,* 408 U.S. 564, 576-78, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). If he did, then Amtrak could not deprive him of this interest without due process of law. *Loudermill,* 470 U.S. at 538. To determine whether Abdul-Qawiy had a property interest in continued employment, the court must ask whether "he had a legitimate expectation based on ... understandings (contract, express or implied), that he would continue in his job."*Hall v. Ford,* 856 F.2d 255, 265 (D.C.Cir.1988).

Abdul-Qawiy alleges in his complaint that, under the collective bargaining agreement, a railroad employee becomes a permanent employee of the railroad ninety days after he begins work, Compl. ¶ 9, and that permanent employees may not be terminated without a fair and impartial hearing, *id.* ¶ 10.He further alleges that he began work on July 8, 2002. *Id.* ¶ 11.Therefore, according to Abdul-Qawiy, he became a permanent employee on October 6, 2002, and, at that point, was subject to procedural protections under the collective bargaining agreement. *Id.* ¶ 13.It is a reasonable inference from these allegations-which the court must accept as true-that Abdul-Qawiy had a legitimate expectation that he would continue in his job as of October 8, 2002, the date that he was terminated. The court, therefore, finds that Abdul-Qawiy has pled his due process claim sufficiently to survive a 12(b)(6) motion and, accordingly, denies Amtrak's motion in that respect.

CONCLUSION

Accordingly, it is this 25th day of October, 2005, hereby

ORDERED, that Amtrak's motion to dismiss is GRANTED with respect to Count Two (Breach of Contract) and Count Three (Wrongful Discharge) of Abdul-Qawiy's complaint and DENIED with respect to Count Four (Due Process).

D.D.C.,2005.
Abdul-Qawiy v. National R.R. Passenger Corp.
Not Reported in F.Supp.2d, 2005 WL 3201271 (D.D.C.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of *Defendant's Motion to Dismiss, Proposed Order Granting Defendant's Motion to Dismiss, and Statement of Points and Authorities in Support of Defendant's Motion to Dismiss* in the above-captioned matter were served by first class U.S. mail, postage prepaid, on April 15, 2008, addressed as follows:

**Andrew Michels**
1701 Kalorama Rd., N.W. #206
Washington, D.C.  20009
*Plaintiff Pro Se*

/s/ Henry A. Platt
Henry A. Platt

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---------------------------------------------------------
                        )

ANDREW MICHELS,            )
1701 Kalorama Rd., N.W. #206  )
Washington, D.C. 20009      )
                        )
        Plaintiff,       )
                        )
        v.           )     Case Number: 1:07-cv-02199 (HHK)
                        )
DYNCORP INTERNATIONAL, LLC, )
3190 Fairview Park Drive, Suite 700 )
Falls Church, VA 22042      )
                        )
        Defendant.     )
---------------------------------------------------------

### [PROPOSED] ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Upon consideration of Defendant's Motion to Dismiss, any opposition thereto, and for good cause shown, it is hereby:

ORDERED that Defendant's Motion to Dismiss be and hereby is GRANTED; it is

FURTHER ORDERED that Plaintiff's Complaint is hereby DISMISSED WITH PREJUDICE.

SO ORDERED this _____ day of April, 2008.


                              _____
                              Hon. Henry H. Kennedy
                              United States District Judge

**LIST OF NAMES AND ADDRESSES OF ALL ATTORNEYS
AND _PRO SE_ PARTIES ENTITLED TO NOTIFICATION OF ENTRY**


**Andrew Michels**
1701 Kalorama Rd., N.W. #206
Washington, D.C.  20009
_Plaintiff Pro Se_


**Henry A. Platt**
Saul Ewing LLP
2600 Virginia Ave., N.W., Ste. 1000
Washington, DC 20037-1922
Phone: (202) 333-8800
Fax: (202) 337-6065
hplatt@saul.com

_Attorneys for Defendant
DynCorp International, LLC_